UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARRYL H. BLACKWELL,

    Plaintiff,

v.                                                            Case No. 2:09-cv-71
                                                          HON. ROBERT HOLMES BELL
MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Darryl H. Blackwell, a former Michigan State inmate, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Michigan Department of Corrections (MDOC), Hearing Administrator Richard Stapleton, Administrative Employee Christopher Crysler, Administrative Law Judge Unknown O'Brien, Resident Unit Officer Unknown Griel, Hearing Investigator D. McRae, Assistant Resident Unit Manager Mary Majurin, Resident Unit Manager Unknown Tallio, Resident Unit Manager Unknown Holso, Corrections Officer Unknown Warner, and Corrections Officer Unknown Eicher.

According to a critical incident report offered by Defendants, on April 9, 2006, at approximately 6:30 p.m., there was an incident in A Unit at the Ojibway Correctional Facility (OCF), which began with two prisoners fighting. At some point, one prisoner stabbed the other and, as staff reported to the scene which was congested with other inmates, about 30 prisoners refused to leave the TV room. Some prisoners had gloves on and jackets pulled up high, others looked out of their cells in anticipation. Emergency Response Teams (ERT) were called in from three other facilities. Although there was initially no active aggression by prisoners, they continued to refuse staff orders

to leave the area. By approximately 8:00 p.m., between 80 and 90 prisoners had gathered. At this point, the prisoners stormed the staff, kicking, punching, and hitting the officers with weapons. When the ERT teams arrived with batons and pepper ball guns, the prisoners finally began to disperse. The incident resulted in 13 officers being sent to the hospital with injuries and at least 30 prisoners being transferred to other facilities. (Defendants' Exhibit 10, Critical Incident OCF-022-06.)

Plaintiff was not involved in the above incident, but alleges that two days later, on April 11, 2006, he had a run-in with Defendant Griel, who continually harassed Plaintiff. Plaintiff asserts that in response to Defendant Griel's harassment, Plaintiff stated that he wished Defendant Griel had been in A Unit at the time of the incident. Plaintiff also stated, "Go ask your fucking buddies what would have happened to ya. They learned." Defendant Griel wrote a threatening ticket on Plaintiff on the basis of this conduct. However, Plaintiff claims that the ticket was written because Plaintiff was black, and the prisoners who were involved in the attack were also black. Plaintiff further claims that the ticket was in retaliation for past complaints Plaintiff had made to Defendant Griel's supervisors.

Plaintiff was found guilty of the misconduct charge following a hearing on April 13, 2006, and was sentenced to seven days of toplock and 15 days loss of privileges. Plaintiff's request for rehearing was denied by Defendant Stapleton on April 25, 2007, and Plaintiff's request for judicial review was denied by the Wayne County Circuit Court on May 18, 2008.

Following Plaintiff's threatening behavior conviction, Plaintiff was reclassified to level V, and was transferred to the Marquette Branch Prison (MBP). The security classification review was completed by Defendant Majurin and approved by Defendant Crysler. Plaintiff asserts that the transfer was motivated by a desire to discriminate against him on the basis of race, as well

as a desire to retaliate against him. On January 11, 2007, Plaintiff received a security classification screen, which determined his true security level to be level IV. However, Plaintiff continued to be held in level V due to lack of bed space in level IV. Plaintiff claims that Defendant Tallio approved this form merely due to the false charge of threatening behavior that Plaintiff had received at OCF.

Plaintiff also alleges that while he was confined at the Chippewa Correctional Facility (URF) on February 18, 2008, Defendant Warner asked Plaintiff if he was going to start a riot at URF. Defendant Eicher stated "You know what we're talking about." Defendant Eicher further stated that although Plaintiff was denying the riot, he was now filing legal work based on it. Plaintiff alleges that he went on his library callout and when he returned, he found Defendant Eicher shaking down his cell and reading his legal pleadings. Plaintiff claims that Defendant Eicher sat reading his petition for judicial review for over 40 minutes. When Plaintiff was finally allowed back in his cell, his legal papers were all torn up in his trash can, there was water in the trash can, copies of his petition for judicial review were missing, Plaintiff's clothes were thrown all over, and his cell was in general disarray.

Plaintiff claims that Defendants' actions violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory, nominal and punitive damages, as well as injunctive relief. The undersigned notes that Administrative Law Judge O'Brien, Hearing Investigator McRae, Resident Unit Manager Holso, and Corrections Officer Warner have never been served and, as such, are not parties to this action.

Presently before the Court is the motion for summary judgment filed by Defendants MDOC, Stapleton, Crysler, Majurin, Greil, Tallio, and Eicher pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that

he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056

(same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Initially, Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to his claim against Defendants Majurin and Crysler. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The

Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants state that on May 14, 2008, Plaintiff filed a grievance alleging that Defendants Majurin and Crysler acted out of a desire to retaliate and discriminate against Plaintiff for thier conduct on April 13, 2006. This grievance was rejected at all three steps of the grievance process as untimely. As noted by Defendants, in *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme

Court held that exhaustion requires "proper exhaustion," in compliance with prison grievance procedures. *Id.* at 90. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

In this case, the actions being complained of by Plaintiff occurred in April of 2006. Plaintiff did not file a step I grievance until May of 2008. Therefore, Plaintiff did not follow the proper time lines as set forth in the grievance policy. Plaintiff's response merely asserts that he was not required to comply with the grievance policy in order to file suit in this court. As noted above, Plaintiff is incorrect. Therefore, Defendants Majurin and Crysler are entitled to summary judgment for failure to exhaust administrative remedies.

Defendants also claim that Plaintiff's claim against Defendant MDOC is barred by the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams*

*v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, Defendant MDOC is entitled to dismissal from this action.

Defendants state that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims because the allegations in this case do not rise to the level of an Eighth Amendment violation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As noted by Defendants,

Plaintiff's allegations do not rise to this level. Therefore, they are entitled to dismissal of Plaintiff's Eighth Amendment claims.

Defendants also state that they are entitled to summary judgment on Plaintiff's due process claims. Plaintiff claims that he was improperly found guilty of a misconduct charge and was sentenced to seven days of toplock and 15 days loss of privileges. In addition, Plaintiff was reclassified to level V, and was transferred to the Marquette Branch Prison (MBP). Finally, Plaintiff states that on January 11, 2007, he received a security classification screen, which determined his true security level to be level IV. However, Plaintiff continued to be held in level V due to lack of bed space in level IV.

The undersigned notes that an increase in security classification and / or a transfer to another facility does not constitute an "atypical and significant hardship" on Plaintiff in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Moreover, seven days of toplock and 15 days loss of privileges do not constitute an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)).

Furthermore, Plaintiff was found guilty following a hearing, his subsequent request for rehearing was denied by Defendant Stapleton on April 25, 2007, and his request for judicial review was denied by the Wayne County Circuit Court on May 18, 2008. Defendants offer a copy of the hearing record, and a review of the documents reveals that Plaintiff had an adequate opportunity to present his defense. (*See* Defendants' Exhibit 1.) In all cases where a person stands

to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). The undersigned concludes that Defendants are entitled to summary judgment on Plaintiff's due process claims.

Defendants state that they are entitled to summary judgment on Plaintiff's retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that Defendant Griel's conduct was motivated by a desire to retaliate against him because of his comment that he wished Defendant Griel had been in A unit during the riot. In addition, Plaintiff claims that Defendant Griel improperly searched his cell and destroyed his property in retaliation for Plaintiff's actions. However, Plaintiff's comment to Defendant Griel does not constitute protected conduct. Therefore, Plaintiff fails to meet the first prong of the test set forth in *Thaddeus-X v. Blatter*, and this claim is properly dismissed.

Defendants state that they are entitled to summary judgment on Plaintiff's equal protection claims because they did not act with racial animus. Plaintiff claims that Defendant Griel wrote a misconduct on him following the riot because Plaintiff is black, like the inmates who participated in the riot. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). However, Plaintiff concedes that he told Defendant Griel that he wished Griel had been present during the riot. Given the proximity to the riot, such a statement was found to be threatening. Plaintiff fails to allege any facts showing that the misconduct conviction and denial of his appeals were motivated by racial animus. Nor does Plaintiff allege any specific facts showing that his transfers and security classification were the result of anything but his own behavior. Therefore, the undersigned concludes that Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

Defendants state that they are entitled to summary judgment on Plaintiff's access to courts claims. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the alleged misconduct has hindered, or is presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff claims that Defendants Griel and Stapleton were involved in his major misconduct conviction and that Defendant Eicher destroyed his petition for judicial review complaint. However, Defendants offer a copy of Plaintiff's petition for judicial review, as well as a copy of the decision on this petition by the Wayne County Circuit Court, as proof that Plaintiff's petition was not destroyed, but was filed with the court. (Defendants' Exhibit 1.) In addition, Defendants correctly note that Plaintiff's right of access to the courts only guarantees his ability to litigate claims, not to win them. The First Amendment does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *Lewis*, 518 U.S. at 351, 355. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's access to courts claim.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

Defendants further claim that Plaintiff is not entitled to compensatory damages because he has not shown that he suffered from a physical injury. Section § 1997e(e) provides as follows:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

*Id.* The Sixth Circuit repeatedly has held, albeit in unpublished decisions, that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. *See, e.g.*, *Merchant v. Hawk-Sawyer*, No. 01-6244, 2002 WL 927026, at \*2 (6th Cir. May 7, 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at \*2 (6th Cir. Aug. 24, 2001); *Robinson v. Corrections Corp. of America*, No. 99-5741, 2001 WL 857204, at \*1

(6th Cir. June 20, 2001); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *2 (6th Cir. June 7, 2001); *Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459 (6th Cir. Sept. 2000); *Raines-Bey v. Garber*, No. 99-1471, 2000 WL 658721, at *1 (6th Cir. May 12, 2000). The Second and Fifth Circuits also have found that § 1997e(e) applies to constitutional claims. *See Thompson v. Carter*, 284 F.3d 411 (2d Cir. 2002) ("Because the words 'federal civil action' are not qualified, they include federal civil actions brought to vindicate constitutional rights."); *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001) (applying § 1997e(e) to constitutional claims, including First Amendment religion claims); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

However, some federal courts have rejected the physical injury requirement of § 1997e(e) when the underlying claim is for a violation of the First Amendment or other right not typically involving physical injury. As the Ninth Circuit held in *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998), "[t]he deprivation of First Amendment rights entitles a plaintiff judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." 143 F.3d at 1213. *See also Williams*, 2000 WL 1434459 (PLRA does not cover First Amendment retaliation claim); *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (no requirement of physical, mental or emotional injury for First Amendment claim because deprivation of First Amendment rights standing alone is a cognizable injury); *Amaker v. Haponik*, 1999 WL 76798, at *7 (S.D.N.Y.) (§ 1997e(e) did not bar plaintiff's First Amendment claims); *Mason v. Schriro*, 45 F.Supp.2d 709, 720 (W.D. Mo.1999) (§ 1997e(e) does not apply to Equal Protection claims under the Fourteenth Amendment); *Lewis v. Sheahan*, 35 F.Supp.2d 633, 637 n. 3 (N.D. Ill.1999) (§ 1997e(e) does not bar a right of access claim); *Friedland v. Fauver*, 6 F.Supp.2d 292 (D.N.J. 1998) (§ 1997e(e) did not bar claim for unconstitutional incarceration following arrest without probable cause); *Warburton v. Underwood*, 2 F.Supp.2d 306, 315 (W.D.N.Y. 1998) (declining to dismiss

Establishment Clause claim under § 1997e(e) for want of plaintiff's showing of physical injury because "such claims nevertheless deserve to be heard"). In contrast, the Seventh Circuit squarely has held that § 1997e(e) bars compensatory damages in First Amendment cases with no physical injury, though it does not bar nominal or punitive damages. *See Allah v. Hafeez*, 226 F.3d 237 (7th Cir. 2000).

The undersigned notes that the question of whether § 1997e(e) bars compensatory damages is unsettled in the Sixth Circuit. However, because Plaintiff is also seeking punitive and nominal damages, and because Defendants are entitled to summary judgment on the merits of claims, the court need not address this issue in the instant case.

Finally, Defendants assert that Plaintiff's claims for injunctive and declaratory relief are properly dismissed because Plaintiff is no longer confined to a prison where any of the defendants are employed. Plaintiff is no longer under the control or custody of Defendants. The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *See Abdur-Rahman v. Michigan Dept. of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991); *Henderson v. Martin,* 73 Fed. Appx. 115, 116 (6th Cir. 2003). Underlying the rule is the premise that injunctive relief is appropriate only where Plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the result of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *For example see Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988). *See also O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). A court should assume that,

absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-496.

In the present action, the possibility that Plaintiff will be subjected to the same alleged unconstitutional activity is too speculative to warrant injunctive relief. Because there is no evidence of "immediate danger" of injury, Plaintiff's request for declaratory and injunctive relief should be dismissed.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for summary judgment (docket #24) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

          /s/ Timothy P. Greeley
         TIMOTHY P. GREELEY
         UNITED STATES MAGISTRATE JUDGE

Dated:   August 26, 2010